Whenever you're ready, Counselor.Thank you, Your Honor. May it please the Court, my name is John Grugin. I am here on behalf of the appellant, Timothy McGee, and I am joined by Christine O'Neill. At the outset, I'd just like to say how honored we are, Judge Aldister, to be here with you on this occasion. Your Honors, today I'd like to address two of the issues that we have raised in our briefs. With respect to the remaining issues, I'd like to rest on the papers, and with the Court's permission, I'd like three minutes of rebuttal. That's granted. Your Honor, we're here today seeking the reversal of the convictions entered against Mr. McGee, and we ask that the Court enter judgments of acquittal. The issues are straightforward. The process of briefing has actually helped us to crystallize the issues, and so I think that we'll be able to do this rather succinctly. Essentially, what we seek today is based only on the explicit holdings and the explicit analysis of the Supreme Court and of this Court. The first issue that I'd like to raise is the validity of SEC Rule 10b-5-2. It's extraordinary that there hasn't been a court that's considered this yet. It is. It is. I'm right. You are right, Your Honor. Okay. You're absolutely right. Either that or my law clerk's had it, but I'm just kidding. It was raised by Cuban, and it was specifically reserved in footnote 40 of the Fifth Circuit opinion. They said that they were not going to get to that issue, but it has not been raised at all. And I'd like to make clear that we are not seeking any ruling that would call into question the validity of the theory of misappropriation. That is not at all what we do. In fact, all that we require, all that we request, is that O'Hagan be applied. And if that's the case, then you're saying there has to be a fiduciary duty, which means B-2 is out, the definition in the regulation is out. Yes, Your Honor. Why should we do that? Your Honor, the misappropriation theory of insider trading cannot be viewed as distinct from nondisclosure liability under Section 10b. In other words, it is not sui generis. It is a subset of nondisclosure liability under 10b, and the Supreme Court over and again has addressed what is prerequisite to any liability for nondisclosure under Section 10b. It did so in Chiarella. It did so in Dirks. It did so in O'Hagan. It has done so since. And it has never deviated once from the requirement that there be a breach of fiduciary duty that is prerequisite to any liability. But doesn't Chiarella also say fiduciary or other similar position of trust or confidence? I mean, it seems like it's, even though it's a fiduciary duty case, true, doesn't it at least admit more? Perhaps it could be something other than a fiduciary duty? Your Honor, it doesn't. Here is what Chiarella says. As we have emphasized before, the 1934 Act cannot be read more broadly than its language and the statutory scheme permit. Section 10b is aptly described as a catch-all provision, but what it catches must be fraud. When an allegation of fraud is based on nondisclosure, there can be no fraud absent a duty to speak. And what is the duty to speak? Well, the Supreme Court addressed that specifically in Dirks. There is no general duty to disclose before trading on material, nonpublic information, and no duty to disclose under Section 10b arises from the mere possession of nonpublic material information. Such a duty arises, rather, from the existence of a fiduciary relationship. Not to require such a fiduciary relationship, we recognize in Chiarella, would depart radically from the established doctrine that duty arises from a specific relationship between two parties and would amount to recognizing a general duty between participants in market transactions to forego actions based on material, nonpublic information. That is explicit. That is unambiguous.  Indeed, even in O'Hagan, where the courts set out the question presented and its holding, at the very outset of the opinion, it describes its holding in the question presented in terms of a fiduciary duty. There simply has never been a case by the Supreme Court in which anything less than a breach of fiduciary duty was recognized as a prerequisite to liability for nondisclosure. So let's, there's a Second Circuit case where you have the, I'll use the shorthand, the computer hacker? Right. The Second Circuit said that was a misappropriation, a deception of identity that allowed for the access of information. Why is that not qualifiable as a deceptive act? There's no fiduciary duty there. What the Second Circuit in that case said is that, is two things. One, in the context of nondisclosure liability, the Supreme Court has always required a breach of fiduciary duty. But this case, the case before it, is different. When an individual commits an affirmative fraud, breaks in, in that case, into the computer system, that is actionable. And so if there is an affirmative act, again, this is not nondisclosure, if there is an affirmative act, then that is going to be actionable under 10B. But where there is nondisclosure liability, and that is insider trading, there is no insider trading absent nondisclosure liability, then there must be a breach of fiduciary duty. So you're saying the only kind of liability there could be is between insiders. We could never have liability under this act with an outsider. No, Your Honor, I'm not saying that at all. It has to be, I'm sorry, let me just add extra fact, it has to have a fiduciary relationship. Absolutely. And you don't find anything in O'Hagan to suggest that O'Hagan might be a little bit broader than that? I don't. It talks about recognized duties, specific relationships, duty of trust, confidence? It says all of that, Your Honor, but it comes, first of all, O'Hagan arrives at its decision by analyzing all of the nondisclosure cases that preceded it. And secondly, in O'Hagan, you were dealing with an individual, an attorney, who clearly had a fiduciary duty. So O'Hagan doesn't go any broader than that. Does O'Hagan describe the fiduciary duty in different ways? Yes, it does. Duties of trust and confidence is frequently associated with fiduciary duties. It comes up in the definitions regularly. It doesn't go any further than that, though. And what it certainly doesn't do is invite the SEC to promulgate a rule that expands its ruling. That is why Chevron deference does not apply. When the government claims that Brand X applies here and that Chevron deference ought to be employed, but Your Honor, there is no Chevron deference when the Supreme Court has already occupied the field. But it has to be in an unambiguous area, right? Under Brand X? No. That's when the Supreme Court gets, that's when the pronouncement carries more than what the agency says if it's unambiguous, on an area that's unambiguous. But if it's ambiguous, you look at the agency. That's not necessarily true because when you read Home Concrete and it's analyzing the colony decision, the IRS decision from the 40s, in that decision the Supreme Court said that the statute was not unambiguous, but then it looked to the statutory history in order to determine what the intent was. And what that gets to, Your Honor, is what's in Chevron. If a court employing traditional tools of statutory construction ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect. In other words, that once the Supreme Court has ruled on an issue, then there is no room at all for any agency discretion. Chevron deference does not apply, and instead, Maislin Industries and Home Concrete applies. Your Honor, the second issue that I would like to address is whether the trial evidence was sufficient to sustain the perjury conviction. Mr. McGee was convicted of violating Section 1621, not 1623, and as Judge Aldister noted in his gross opinion in 1975, while 1623 does not require satisfaction of the two-witness rule, 1621 does. And to satisfy the two-witness rule, the testimony of the second witness or of the documentary evidence that is presented must corroborate the first witness' testimony. Evidence that merely coincides but does not corroborate is not sufficient. This Court specifically held that in Rose and it specifically held that in Knapp. In Rose, it said, to sustain a conviction for perjury, the burden is on the government to establish by substantial evidence, excluding every other hypothesis than guilt, the essential elements of the crime charged. And here, Your Honors, the government failed to meet that burden. Well, you know, you've got a high hill to climb here. I mean, you know the standard of review, quite high. The standard of review is de novo, and the government relies on the parallelism. For sufficiency of the evidence? For sufficiency of the evidence, it's plenary review, Your Honor. Okay. Do you have a site for that? Where it's plenary? On sufficiency of the evidence? I'm sorry, it's in our briefs, Your Honor. Okay. Your Honor, regardless of the standard of review, You're not confusing that with the vagueness issue, whether a question is vague or not. No, Your Honor. Okay. Regardless of the standard of review, there is still evidence that is required. The elements of the crime must be met. They must be satisfied. And here, the two-witness rule is only satisfied when there is corroborating evidence that excludes every other hypothesis than that of guilt. What about all that trading activity? The trading activity coincides, but it does not corroborate. The trading activity does not show why he traded. The why as to why he traded was actually introduced in evidence through Bill Miller. The jury couldn't reasonably infer from that what the government assigned to it? I mean, it was a huge uptick after the supposed insider information was imparted. All of a sudden, there's a huge uptick in trading. Your Honor, the evidence alone does not establish guilt. The evidence of the trading does not, in and of itself, establish guilt. He had purchased in the security before, three times the year before. There was evidence presented at trial that he did so after the research of his assistant, and it was only based on that research and the spike in volume that the assistant observed that they decided to go ahead with the purchase of the security. So standing alone, no, Your Honor. The timing of the evidence does not at all corroborate the testimony from Mr. McGuire. Is there any significance of the fact that he did it on margin? No, Your Honor, there isn't, because the government conceded on cross-examination that he traded on margin in other cases, too. So for those reasons, Your Honor, we believe that the government has failed to meet its burden under Neff and under Rose. And with that, I'll sit down and wait for rebuttal. Okay. Thank you, counsel. We'll hear from the government. Good afternoon, Your Honors. Good afternoon, Judge Aldous Sirk. My name is Bernadette McKeown, and I represent the United States in this matter. On the first issue, the validity of Rule 10B 5.2, the commission did not exceed its authority in promulgating Rule 10B 5.2 because neither the statute nor the Supreme Court precedent cited by the defense precluded agency rulemaking in this area. We need to start with the language of the statute, because Section 10B of the Securities and Exchange Act is a very broad statute, a catch-all statute, as they described it, that prohibits the use of a manipulative or deceptive device in connection with the sale of the security, and it specifically recognizes in contravention of such rules and regulations as the commission may prescribe. So right off the bat, the statute is recognizing that the commission is enforced with fulfilling the directives of Rule 10B 5 to prevent fraud. The statute also does not address whether nondisclosure is a manipulative or deceptive device. And the first case, and I would note before I get started that O'Hagan is the only case that's addressed by the Supreme Court, the misappropriation theory. Chiarella, Dirks, Zanford, all the other cases address the classical theory of liability. But Chiarella is not nearly as narrow as the defense suggests, and I think we need to start with the language in Chiarella. Chiarella considered whether the defendant in that case was liable under the classical theory of insider trading liability, which means that he would have had a duty owed to the shareholders of the company whose stock he traded on using nonpublic material information. The defendant was a printer at a company that printed takeover bids. The court analyzed the insider trading at that point rules that were adopted by the commission, and it stressed that the liability in such a case is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction. Those were the words that it used to describe the requisite duty. The court repeatedly stressed that there could not be fraud absent a duty to speak, and that that duty arose from a specific relationship between the two parties. It then went on, in discussing the facts before it, to state that to find that the defendant there did not, was not liable because he owed absolutely no duty to the takeover company whose securities he had purchased, saying he's not their agent, he's not their fiduciary, and he was not a person in whom the sellers had placed trust and confidence, and it was only through impersonal market transactions. Chiarella also set some limits to liability. It said, because it must arise from a duty, it doesn't reach all non-public information, nor is there a general duty by persons trading in market transactions to forego trading on non-public information. Just out of curiosity, this isn't before us, but would the SEC be free to eliminate the duty requirement altogether? I don't believe so, Your Honor. Well, because of the way that the insider trading liability has developed, remember the statute is silent as to insider trading, and so the Supreme Court has repeatedly emphasized that there must be a duty. What they haven't done is firmly draw lines as to what that duty is. None of these cases suggest that it has to be a fiduciary duty or the functional equivalent of a fiduciary duty. Although they all do deal with it. Well, they do because, well, in insider trading cases in particular, the classical theory, you're most likely going to have a fiduciary relationship because your duty is owed to the shareholders of the company that you work for. So it's just going to happen that way. And O'Hagan simply happened to involve a lawyer who had a fiduciary obligation to his client and his law firm, and that was whom he defrauded by trading on information he obtained during the course of merger discussions. So naturally, the court focused on the relationship of the parties before it, but O'Hagan did not limit, did not set limits and say that it could only apply in this situation, it said this is sufficient. And as Judge Schwartz recognized, O'Hagan used different terms to describe the duty that was owed. It said, it used the term recognized duty without defining that. Then it went on to say a duty of trust and confidence twice, duty of loyalty and confidentiality also twice, and a fiduciary duty or other duty. And that was said once. In your research, aside from, I think it's U.S. versus Corbyn, and U.S. versus Reed, which is, I think, a pre-rule case, but post-rule, have you found any other cases that are without a fiduciary relationship at issue between the parties in a criminal case? In a criminal case, no, Your Honor. There's the Conrad decision, the Southern District in New York case, but that was not a criminal, that's an SEC enforcement action. So, no, I mean, the SEC is careful about what cases they ask us to take on as criminal matters. I would note, too, that the Supreme Court in O'Hagan was well aware of the Chessman decision. The Second Circuit decision, which really was the leading decision on misappropriation theory prior to O'Hagan. And in Chessman, they had required a fiduciary duty or the functional equivalent of a fiduciary duty. And the Supreme Court did not adopt this language or the reasoning of Chessman. It notes Chessman in a footnote, but it seems to, it leaves a much broader, it creates a much broader rule. And so, Rule 10b-5 steps into a gap that's left by O'Hagan. O'Hagan says, you must have this duty, but they don't define it, and they don't set the contours of the relationship that creates a duty of trust and confidence. And yet, the statute actually says, as you say, the SEC should probably rule. This is their job. Yeah. This is their job to step in and do this. And so, what Rule 10b-5.2 does is it provides a non-exclusive list of circumstances in which a person has a duty of trust or confidence for purposes of this appropriation liability. And in this case, of course, it's prong two that's implicated, which is where a person, the parties have a pattern practice in history or history of exchanging confidences such that the recipient of the information knows or reasonably should know that the person who provided the information expects that person to keep the information confidential. It really does comport with what O'Hagan's repeatedly emphasized, which was that you must, the rule, the statute is all about deception. It's preventing deceptive practices. The rule is doing that. In a misappropriation theory, the fraud is on the source rather than on the shareholders. It's the person who relays information that they know is confidential and non-public and expects that that will not be, that that will be kept confidential. And that's the violation there, the violation of the duty. So the rule comports with O'Hagan. It doesn't, it's not interpreting O'Hagan, it's filling a gap left by O'Hagan. And that's exactly what brings it under Chevron deference. It's a permissible interpretation of the statute. I don't think there's any argument that it couldn't be. And then it also doesn't conflict with nor does it impermissibly interpret O'Hagan in a way that is precluded by law. So Chevron deference doesn't, it does fall under Brand X because it's not, there's no judicial, certainly O'Hagan doesn't state unequivocally that the statute unambiguously. Your adversary said Chevron has no application here. Are you saying it does because it is ambiguous? I'm saying, no, well, the Chevron analysis requires two steps. And the first step is. Well, you don't get there until. Yeah, well, the first step is the statute is silent on this issue. So is this a permissible interpretation, a reasonable, it is. The second step is, of course, where there's prior judicial precedent. And in this case, there is in O'Hagan. Does that unambiguously forbid the interpretation. And that's Brand X? That's Brand X. And our position is it does not because O'Hagan doesn't define the limits of misappropriation liability, doesn't define the contours of the relationship that gives rise to a duty of trust and confidentiality. Ms. McEwen, let me move over to a different concept. The basic argument here is that Rule 10b-5-2 is invalid, okay? What, in your research, do you find any other court of appeals suggesting that, the invalidity? No, Your Honor. There's no court that has, there's no circuit court that's directly considered the issue. But, and there is a lower court decision, a district court decision, where they did find that it was a valid exercise of the court's authority. But the same issue wasn't presented there about it being foreclosed by O'Hagan. I would say that, Your Honor, it's our opinion that one of the reasons, that the reason that this particular challenge hasn't been raised before is because it really isn't a good challenge to the law. There is no authority that really supports the position. And at least two circuit courts have recognized that O'Hagan didn't close the door on further agency action in this regard. That it left unsettled the scope of the duty that gives rise to, the relationships that give rise to a duty of trust and confidence. And I would also note that it satisfies the second component of Chevron because it's a reasonable construction of the statute, a permissible, reasonable construction. It's intended to prevent deception by categorizing relationships that lead to a fraud on a deception of a person involved in securities trading. And it's faithful to O'Hagan. I'll move on to- All right, let me go one step further. If we would agree with you, do you believe that because the rule has been challenged as invalid, that this would require an opinion for publication by this court? Your Honor, I would believe that it would be very helpful if this court would issue a precedential decision on this issue because no other court has done so to date. So we would think that that would be very helpful, Your Honor. Okay, thank you very much. And with respect to the perjury argument, I would like to start by addressing the standard of review. Because there is no dispute from the government that the two-witness rule is still good law and it still applies here. In other words, that the testimony of one witness must be corroborated, must be corroborated by evidence that is independent of the testimony of the witness, that is inconsistent with evidence, and that substantiates that testimony. There's no dispute about that. But there is no authority that holds that, at least in this circuit, that independent evidence must conclusively and alone establish guilt. Although the defendant cites several cases for this proposition, they don't say that. Nessenbaum states, you may convict upon the testimony of one witness if that testimony was supported by proof of corroborative circumstances. It does not add that they must independently establish guilt. Ness says the same thing. It says corroborative evidence must tend to show perjury independently and be inconsistent with innocence. Not that it must. And with respect to the overall standard of review for this perjury charge, again, we apply the standard that's been used for years of Jackson versus Virginia, which is that no rational juror could find beyond a reasonable doubt under the facts and the evidence drawn in a light most favorable to the government that the defendant was guilty. So under those governing standards, it's clear in this case that the evidence was sufficient to support a rational juror's finding that the defendant was guilty of perjury. Certainly the records themselves were sufficiently corroborative of McGuire's testimony that he gave the defendant this information sometime prior to July 14th. And I would note that the defense has said that, you know, they say we blatantly mischaracterized this issue because there's no evidence that he, no evidence in the record that he said that he could pinpoint it at any point prior to July 23rd. And that's simply not true. If you go through the defendant's, McGuire's direct testimony, it lays out in detail the timeline, which is, he says he starts drinking again, he goes to AA meetings in June. At the end of June, during a golf tournament, he, and, no, I'm sorry, I'll start with the triathlon. There's a triathlon towards the end of June. We know from an email that was sent after the triathlon that the triathlon occurred on the weekend of June 22nd. The email's dated June 25th, says, congrats on a great race. Then he testifies that he, in the next weekend, either the following weekend or the following, or the weekend after that, so within two weekends, he attends a golf tournament where he drinks for three days and he goes right back to AA. And he said he saw, his words were, he saw Mr. McGee right after he went back to AA. And the conversation occurred after that first encounter, after he had been drinking. So, and the conversation at issue, of course, involved the disclosure of the confidential business information. You're going to have to wrap up, counsel. Oh, I'm sorry, Your Honor. Okay, well, I'll just say that the records do sufficiently corroborate them. As the district court found, the unusual timing, the large number of shares, the fact that he did not have a significant amount of stock before that, not only corroborated, but validated McGuire's testimony about the timing of the events. And I suggest that those records are more than sufficient. Thank you, Your Honor. Thank you, counsel. And we'll hear with Bob. Your Honor, just a few points. First of all, I'm not aware of having said that the government blatantly mischaracterized anything. With respect to whether or not Mr. McGuire could pinpoint when he provided the testimony on cross-examination, he said that he couldn't. That's at page 227A of the record. There is no dispute about that. I don't think that there can be. Your Honors, if this court ignores the body of law that preceded O'Hagan, if this court ignores the decisions on which O'Hagan expressly based its analysis, then you will arrive at the result that the government urges. But again, from our perspective, there is no liability, there is no insider trading liability in the absence of non-disclosure liability. And there has never been a case in which the Supreme Court has required or permitted anything less than a breach of fiduciary duty as prerequisite to that liability. It didn't do so in Chiarella, where there was no breach of fiduciary duty. It did it in O'Hagan, where there was a breach of fiduciary duty. With respect to the court asked where we had the authority for the standard of review, we were relying on United States v. Borman, 559 F3rd 150 in support of that. What proposition does that stand for? The plenary review, the same review as the district court employed. For what issue, though? Sufficiency of the evidence, or? Sufficiency of the evidence of the perjury charge. Your Honor, with that, I'd like to rest. All right. Thank you. Thank you, counsel. Well, we thank you for excellent briefs and excellent argument. And we'll take the case under advisement. Could the clerk adjourn court?